## Segal *v.* Segal et al., Appellants.

Argued March 19, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Raymond J. Porreca,* for appellants.

*Paul J. Senesky,* for appellee.

OPINION BY WOODSIDE, J., June 13, 1963:

This is an appeal from the order of the court below affirming the decisions of the Workmen's Compensation Board granting compensation in both a personal injury case and a death case.

Samuel Segal, who had been suffering from diabetes, injured a toe while in the course of his employment by Max Segal on February 26, 1958. The toe became gangrenous and had to be amputated. Under a workmen's compensation agreement, total disability was paid to the injured for 57 2/7 weeks at $37.50 a week until April 20, 1959. On May 13, 1959, the insurance carrier filed a petition to terminate the agreement alleging a liability of only 52 weeks compensation for the loss of the toe. While this case was pending and before testimony was taken thereon, Samuel Segal died of a cerebral hemorrhage on August 11, 1959. Lena Segal, widow of Samuel, did not file a claim for death benefits until January 16, 1961. This was more than 16 months after the death of Samuel Segal.

The insurance carrier denied liability on the death case on the grounds that the petition was filed too late and that there was no causal connection between the accident and the death. It also denied liability on the injury case after April 20, 1959, on the ground that

any disability suffered thereafter was not caused by the accident but was due to natural causes. The two cases were joined for the purpose of taking testimony. The referee, the board and the court below rejected all the insurance carrier's contentions and awarded compensation in both cases. The carrier appealed to this Court.

We shall first consider the death case.

Section 315 of The Workmen's Compensation Act, as amended, 77 P.S. §602, provides: "In cases of personal injury all claims for compensation shall be forever barred, unless, within sixteen months after the accident, the parties shall have agreed upon the compensation payable under this article; or unless within sixteen months after the accident, one of the parties shall have filed a petition as provided in article four hereof. *In cases of death all claims for compensation shall be forever barred, unless, within sixteen months after the death, the parties shall have agreed upon the compensation under this article, or unless, within sixteen months after the death, one of the parties shall have filed a petition as provided in article four hereof.* Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of sixteen months from the time of the making of the most recent payment prior to date of filing such petition: . . ." (Italics ours) This provision is not an ordinary statute of limitations. It is a statute of repose. When the time provided therein elapses not only the remedy but the right perishes. *Overmiller v. D. E. Horn & Co. Inc.*, 191 Pa. Superior Ct. 562, 566, 571, 159 A. 2d 245 (1960).

As no agreement was entered into and no petition was filed in the death case "within sixteen months after the death," that claim is barred by the above provision in italics unless for some reason it is not applicable. The referee found facts upon which he con-

cluded that the claimant's attorney was misled by the insurance carrier into not filing the death claim within the statutory period. The board set aside the referee's findings on this point, but concluded that the statutory bar would not take effect until 16 months after the last payment on the personal injury agreement. The board then held that the carrier should have paid compensation in that case and not having done so the bar on the death case could not apply until after the judgment entered against the carrier in the injury case was paid.

The following facts are beyond dispute: No petition was filed and no compensation agreed upon in the death case within 16 months after death; no payments of compensation were ever made in the death case; no payments of compensation in the personal injury case were made within 16 months of the date of death; no payments could have been due for any period of disability in the injury case during the 16 months prior to the filing of the claim petition for death benefits.

The appellee argues first that the two cases should not be considered as different cases, as they clearly are in §315 of The Workmen's Compensation Act, supra, but should be treated as one case. Then the appellee argues that even though "the most recent payment prior to date of filing [the death claim] petition" was made on the personal injury claim more than 16 months ago, nevertheless the board has now found that a payment was due and therefore, the statutory bar will not be effective until 16 months after that payment is made.

It seems clear to us that the legislature, having divided compensation cases into two classes in §315, supra,—"cases of personal injury" and "cases of death" —recognized and intended that a personal injury case and a case of a death claim were separate and distinct cases and that the reference in the last above quoted sentence to "payments of compensation . . . made in any

case" must relate to the case being considered, here the death case, and not to any other case.

The courts have held many times that personal injury claims and death claims constitute independent and separate cases even when founded on the same accident.

In *Rossi v. Hillman Coal & Coke Co.*, 145 Pa. Superior Ct. 108, 111, 20 A. 2d 879 (1941), this Court said and held that "the right of the widow to secure for herself and dependent children compensation for the death of the employee is, under the act, entirely independent of the right of the employee."

In a case much closer than the one before us, it was said that "compensation on behalf of a dependent child on the death of an employee is entirely separate and distinct from the widow's compensation, though the claim for the child may be asserted by the widow and the award for the child be made payable to her." *Sweeney v. Reading Company*, 146 Pa. Superior Ct. 539, 542, 23 A. 2d 66 (1941) (allocatur refused). There the claim of a dependent child filed beyond the statutory period after the death was held to have been barred under §315, supra, even though an agreement had been entered into within the statutory period providing compensation for the widow and another dependent child, *and payments were being made thereon up to the time the claim for the second child was filed*. See also *Smith v. Primrose Tapestry Co.*, 285 Pa. 145, 131 A. 703 (1926).

The widow's claim is an independent and not a derivative claim. *Parks v. Winkler*, 199 Pa. Superior Ct. 224, 228, 184 A. 2d 124 (1962); *Holahan v. Bergen Coal Co.*, 164 Pa. Superior Ct. 177, 183, 63 A. 2d 504 (1949). In *Jankaitis v. Harleigh Brookwood Coal Co.*, 134 Pa. Superior Ct. 125, 129, 4 A. 2d 161 (1939), it was pointed out that "The claimant in one proceeding was the husband and in the other his widow. The com-

pensation allowable to each was by virtue of separate and distinct provisions of the statute. Each right was independent of the other."

But suppose we accept as one these two cases, separately filed, separately numbered, brought by different parties upon which separate decisions were filed by the referee and the board, and which have been uniformly held by this court to be separate cases. What the board held was that the statutory bar is not effective if the board finds that disputed compensation was due, even though no payments were made on that compensation within the statutory period. It is clear that to apply this to a single compensation case would be to permit the claimant to lift himself by his own bootstraps. The rule promulgated by the board, illogical when applied to a single case, cannot become sound when complicated by taking two cases and considering them to be one case.

The claim filed by the widow in the death case was filed beyond the time allowed by statute. "The legislature made the filing of the claim petition within the specified time an express condition of the right to obtain an award of compensation, and intended that the failure so to do should operate as an absolute bar of the right." *Thorn v. Strawbridge & Clothier,* 191 Pa. Superior Ct. 59, 61, 62, 155 A. 2d 414 (1959).

As the death claim must be dismissed because it was filed too late, we need not decide the other question raised by the appellant in that case.

We shall now consider the personal injury case.

Samuel Segal had been suffering from diabetes prior to the injury to his toe on February 26, 1958. After the amputation of the toe, the operation site was slow in healing and the control of the diabetes became more difficult. By October 17, 1958, the operative site had healed. However, Segal was unable to work and remained under treatment for diabetes and impaired cir-

culation. The physician who was treating him testified that on October 21, 1958, the diabetes was controlled. On October 25, 1958, Segal suffered a cerebral vascular accident. He was admitted to the Veterans' Administration Hospital on May 28, 1959, was discharged August 5, was readmitted August 7, and died there August 11, 1959, at the age of 63. At the veterans' hospital, his illness was diagnosed as "cerebral hemorrhage due to arteriosclerosis; 2, diabetes mellitus; 3, encephalomalacia of the right cerebral due to arteriosclerosis." The death certificate showed death to be caused by a "Cerebral Hemorrhage due to Arteriosclerotic Cardio vas. dis." with "Diabetes Mellitus" as a contributing factor. Dr. David Warren Kramer and Dr. David Joseph Lafia, both of whom treated the deceased, testified that in their opinion there was no causal connection between his injury and his disability from the cerebral vascular accident. However, Dr. Morris Segal, who had not treated the deceased during his lifetime, was called by the claimant as an expert, and testified that in his opinion the injury to the claimant "incapacitated him as far as working." Dr. Segal further testified that, "From studying the hospital record, it is my opinion that he was totally disabled to do any work at all because of the continuous infection of the stump of the first toe. Q. And your opinion, then, is this man could be classified as totally disabled? A. That was my opinion, that he was totally disabled since the date of the accident."

The evidence seemed to indicate that the point of operation had "healed" and that the infection was not "continuous," thus substantially reducing the value of Dr. Segal's opinion. The weight of the opinion evidence appeared to us to be with the defendant, but the facts are for the board and the courts may not disturb the board's findings if there is evidence to support them. The board, therefore, had the right to reject the

opinions of Dr. Kramer and Dr. Lafia and accepted the opinion of Dr. Segal on the cause of the disability after the cerebral vascular accident on October 25, 1958. Having done this, we must accept the findings of the board.

The order of the court below affirming the decision of the board on the petition to terminate in the personal injury case is affirmed.

The order of the court below affirming the decision of the board in the death case is reversed.